IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH

LAURA CATENA, GREGORY )
NOVOTNY, )
)                    2:20-CV-00160-MJH
            Plaintiffs, )
)
    vs. )
)
NVR, INC., )
)

            Defendant,

OPINION AND ORDER

Plaintiffs, Laura Catena and Gregory Novotny, has filed the within action against

Defendant, NVR, Inc., for damages arising from alleged defects and deficiencies in the

construction of their new home.   Plaintiffs assert claims for Breach of Contract (Count I);

Breaches of Express and Implied Warranties (Count II); Violation of the Unfair Trade Practices

and Consumer Protection Law ("UTPCPL") (Count III); Fraud (Count IV); and Negligent

Misrepresentation (Count V).  (ECF No. 1).  Plaintiffs also include claims for punitive damages

under Counts III, IV, and V.   NVR has filed a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6),

seeking dismissal of Counts I, III, IV, and V, and dismissal of the implied warranty claims in

Count II.  Following Plaintiffs' Brief in Opposition and NVR's Reply Brief, the matter is now

ripe for consideration.

Upon consideration of Plaintiffs' Complaint (ECF No. 1), NVR's Motion to Dismiss and

Brief in Support (ECF Nos. 9 and 10), Plaintiffs' Brief in Opposition (ECF No. 11), NVR's

Reply Brief (ECF No. 12), and for the following reasons, NVR's Motion to Dismiss will be

granted in part and denied in part.

I.      Background

On September 17, 2017, Plaintiffs entered into a Purchase Agreement with NVR for the construction of a new home. (ECF No. 1 at ¶ 10 and ECF No. 1-1).   In March 2018, NVR completed construction.  (ECF No. 1 at ¶ 12).  On March 30, 2018, Plaintiffs closed on the home and moved in shortly thereafter.  *Id*. at ¶ 14.  Upon occupancy, Plaintiffs began to notice numerous defects and deficiencies that were not in accord with NVR's designs and specifications.  *Id*. at ¶¶ 16-17.  Plaintiffs reported the deficiencies to NVR, who attempted repairs.  *Id*. at ¶ 18.  Plaintiffs aver that NVR's attempted repairs either did not remedy, exacerbated, and/or created new deficiencies.  *Id*. at ¶¶ 19-20.   Plaintiffs claim that they relied on NVR's assurances that it would repair deficiencies; however, NVR failed and/or refused to timely perform repairs in its attempts to "run out" the contract limitations periods on Plaintiffs' claims.  *Id*. at ¶ 21.  Plaintiffs also aver that NVR refused to correct some deficiencies.  *Id*. at ¶ 22.

At closing, Plaintiffs received a copy of NVR's Homeowner's Manual, which included information about limited warranties.  *Id*. at ¶ 15 and ECF No. 1-2.  The limited warranty periods are either one or two years, depending on the home's item or feature.  (ECF No. 1-3 at pp. 2-3). Plaintiffs have alleged deficiencies that could be limited by the one or two-year warranty periods.  (ECF No. 1 at ¶ 16 and ECF No. 1-3 at pp. 2-3). The Purchase Agreement purports to shorten the statutory limitations period to one-year. (ECF No. 1-2 at ¶ 13).   In addition, the Purchase Agreement and the Homeowner's Manual includes language purporting to disclaim implied warranties and to limit recovery of damages.  (ECF No. 1-2 at ¶ 6 and ECF No. 1-3 at pp. 59, 61).

NVR's Motion to Dismiss seeks dismissal of Plaintiffs' Count I, Breach of Contract claim, asserting it is time-barred by the express terms of the Purchase Agreement. NVR's Motion also challenges Count II, Breach of Express and Implied Warranties, in part, on the basis that the claim for breach of implied warranty of workmanship is foreclosed by the Purchase Agreement. NVR's motion seeks dismissal of Count III, UTPCPL, because said claim is barred by the economic loss and/or gist of the action doctrine, or alternatively, because Plaintiffs have not alleged the element of justifiable reliance. NVR also challenges Count IV, Fraud, and Count V, Negligent Misrepresentation, asserting that each claim is barred by the economic-loss and/or gist of the action doctrine. In addition, NVR argues that Plaintiffs' Count IV, Fraud claim fails, because Plaintiffs do not allege facts with sufficient particularity. The defense also seeks dismissal of any consequential damages, because the Purchase Agreement limits Plaintiffs' remedy to repair or replacement. NVR also asserts that Plaintiffs have failed to allege sufficient facts to support any claim for punitive damages.

II.      Standard of Review

When reviewing a motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Eid v. Thompson*, 740 F.3d 118, 122 (3d Cir. 2014) (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir.2008)). "To survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556); *see also Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 147 (3d Cir. 2014). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Factual allegations of a complaint must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. A pleading party need not establish the elements of a *prima facie* case at this stage; the party must only "put forth allegations that 'raise a reasonable expectation that discovery will reveal evidence of the necessary element[s].'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir.2009) (quoting *Graff v. Subbiah Cardiology Associates, Ltd.*, 2008 WL 2312671 (W.D. Pa. June 4, 2008)); *see also Connelly v. Lane Const. Corp.*, 809 F.3d 780, 790 (3d Cir.2016) ("Although a reviewing court now affirmatively disregards a pleading's legal conclusions, it must still . . . assume all remaining factual allegations to be true, construe those truths in the light most favorable to the plaintiff, and then draw all reasonable inferences from them.") (citing *Foglia v. Renal Ventures Mgmt., LLC*, 754 F.3d 153, 154 n. 1 (3d Cir.2014)).

Nonetheless, a court need not credit bald assertions, unwarranted inferences, or legal conclusions cast in the form of factual averments. *Morse v. Lower Merion School District*, 132 F.3d 902, 906, n. 8 (3d Cir.1997). The primary question in deciding a motion to dismiss is not whether the Plaintiff will ultimately prevail, but rather whether he or she is entitled to offer evidence to establish the facts alleged in the complaint. *Maio v. Aetna*, 221 F.3d 472, 482 (3d Cir.2000). The purpose of a motion to dismiss is to "streamline [ ] litigation by dispensing with needless discovery and factfinding." *Neitzke v. Williams*, 490 U.S. 319, 326–327, (1989).

When a court grants a motion to dismiss, the court "must permit a curative amendment unless such an amendment would be inequitable or futile." *Great Western Mining & Mineral Co.*

4

*v. Fox Rothschild LLP*, 615 F.3d 159, 174 (3d Cir. 2010) (internal quotations omitted). Further, amendment is inequitable where there is "undue delay, bad faith, dilatory motive, [or] unfair prejudice." *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). Amendment is futile "where an amended complaint 'would fail to state a claim upon which relief could be granted.' " *M.U. v. Downingtown High Sch. E.*, 103 F. Supp. 3d 612, 631 (E.D. Pa. 2015) (quoting *Great Western Mining & Mineral Co.*, 615 F.3d at 175).

III.     Discussion

a.   Breach of Contact Claim

NVR argues that Plaintiffs' breach of contract claim should be dismissed because the "contractual limitation of actions" provision in the Purchase Agreement requires Plaintiffs to have filed a claim within one year.  The Purchase Agreement states in relevant part as follows:

> Section 13. Claims and Disputes. YOU AND WE AGREE THAT ANY CLAIMS ARISING OUT OF OR RELATING TO THIS AGREEMENT, SETTLEMENT HEREUNDER, OR IMPROVEMENTS TO THE PROPERTY, REGARDLESS OF LEGAL THEORY, EXCEPT ANY CLAIMS UNDER THE LIMITED WARRANTY ("CLAIMS") SHALL BE SUBJECT TO A ONE YEAR LIMITATION OF ACTION PERIOD AND BAR DATE. SUCH CLAIMS BASED ON MATTERS BEFORE THE SETTLEMENT DATE SHALL BE DEEMED TO HAVE ARISEN AND ACCRUED, IF AT ALL, AND THE ONE YEAR LIMITATION OF ACTION PERIOD FOR ALL CLAIMS SHALL BE BEGIN TO HAVE RUN TO RUN ON THE ACTUAL SETTLEMENT DATE. ALL APPLICATION OF THE SO-CALLED "DISCOVERY RULE" IS MUTUALLY WAIVED BY THE PARTIES. BY EXECUTING THIS AGREEMENT, YOU ACKNOWLEDGE YOUR UNDERSTANDING AND AGREEMENT TO THESE TERMS SAID ONE YEAR PERIOD IS REASONABLE IN ALL RESPECTS.

(ECF No. 1-2 at ¶ 13).  NVR argues that Plaintiffs were required to file their breach of contract claim within one year from the March 30, 2018 settlement date, i.e. by March 30, 2020.  Since Plaintiffs filed their Complaint on February 3, 2020, NVR argues that Count I must be dismissed as time-barred.

Plaintiffs contend that the one-year limitation period in the Purchase Agreement does not apply, because the contract limitation period is manifestly unreasonable. In addition, Plaintiffs argue that the limitation period was tolled under the "repair doctrine." NVR counters that Courts have consistently upheld one-year limitation provisions and that the repair doctrine does not toll the Plaintiffs' claim, because Plaintiffs do not allege any dates when NVR attempted repairs.

Under Pennsylvania law, a written agreement, prescribing a "shorter time [than the statutory limitations period] which is not manifestly unreasonable," is valid. 42 Pa.C.S.A. § 5501(a); *Lardas v. Underwriters Ins. Co.*, 231 A.2d 740, 741 (Pa. 1967). However, as observed in *Stuebe v. SS Indus., LLC*, 2019 WL 4034768 (E.D. Pa. Aug. 26, 2019), "there is little case law in Pennsylvania addressing exactly how long is 'not manifestly unreasonable.'" *Id*. at * 2 (citing *PSC Info Group v. Lason, Inc.*, 681 F. Supp. 2d 577, 587 (E.D. Pa. 2010)). In support of its motion, NVR cites to several cases upholding contractual one-year limitation periods in the insurance context. *See Gowton v. State Farm Fire & Cas. Co.,* 2016 U.S. Dist. LEXIS 8445442 (W.D. Pa. 2016); *Palmisano v. State Farm Fire & Casualty Co.*, 2012 WL 3595276, at *9 (W.D. Pa. Aug. 20, 2012); *McElhiney v. Allstate Ins. Co.*, 33 F. Supp.2d 405, 406 (E.D. Pa. 1999); *Lardas v. Underwriters Inc. Co.*, 231 A.2d 740,741 (Pa. 1967). The "manifestly unreasonable" standard for shortening suit-limitation periods has not been confined to the insurance context. It has been applied, to contract law in general. *See, e.g., Q. Vandenberg & Sons, N. v. Siter*, 204 Pa.Super. 392, 204 A.2d 494, 498 (Pa. Super. Ct. 1964) (applying language similar to that found in § 5501, before enactment of § 5501, in the context of a breach of product warranty case); *Maxatawny Twp. v. Kutztown Borough*, 113 A.3d 895, 903 (Pa. Commw. Ct. 2015) (applying § 5501 in the context of an intergovernmental development contract

dispute); *Hornberger v. Commonwealth Sec. Sys. Corp.*, 42 Pa. D. & C.4th 531, 534-535 (Pa. Comm. Pls. Ct. 1998) (applying § 5501 in the insurance context); *PSC Info Group v. Lason*, *Inc.*, 681 F. Supp. 2d. 577, 587 (E.D. Pa. 2010) (applying § 5501 in the context of a service contract dispute); *Grosso v. Fed. Express Corp.*, 467 F. Supp. 2d 449, 456 (E.D. Pa. 2006) (applying § 5501 in the context of an employment contract dispute). Thus, NVR argues that the one-year limitations provision is valid and enforceable. Plaintiffs counter that these cases are distinguishable from the vendor-homeowner context.

Neither party has identified a precedential case that has applied "manifestly unreasonable" in the vendor-homeowner context. NVR has sought enforcement of this same contract limitations language in at least one other case within this District. *See Tripodes v. NVR,* *Inc.*, No. CV 18-1131, 2019 WL 571448, at *4 (W.D. Pa. Jan. 11, 2019), report and recommendation adopted, No. 2:18CV1131, 2019 WL 568348 (W.D. Pa. Feb. 12, 2019). In *Tripodes,* NVR sought enforcement of the limitations provision to bar those plaintiffs' breach of contract and breach of warranty claims. *Id.* There, the plaintiffs argued that the one-year limitations of action provision was ambiguous and unenforceable, because it was at-odds with other longer warranty time periods. *Id.* at *5. The Court, in *Tripodes*, concluded that decision at the motion to dismiss stage was premature, absent the "present[ation] of adequate evidence at the summary judgment stage or at trial." *Id.* Here, as in *Tripodes*, the Plaintiffs' Complaint includes an extensive list of grievances that may fall within the contract limitations period. (ECF No. 1 at ¶¶ 16 and ECF No. 1-3 at pp. 59-62). Facts germane to the various grievances need to be further developed in discovery. As such, decision upon the applicability of any limitations period is premature.

Further, as regards the repair doctrine, at this stage, it is unclear whether it will toll the limitation period on some or all of the alleged deficiencies.   The repair doctrine, as recognized in *Amodeo v. Ryan Homes, Inc.*, 595 A.2d 1232, 1235-39 (Pa. Super. 1991), provides a common law equitable estoppel of the statute of limitations defense where the seller attempts to make repairs and represents that such repairs will cure the defect. Tolling of the statute of limitations will attach where repairs were attempted; representations were made that the repairs would cure the defect(s); and the plaintiff relied on such representations. *Id.* at 1237. The purpose of the "repair doctrine" is to not fault a party who delays filing a lawsuit in reliance on another party's assurances that repairs will be made that will make a lawsuit unnecessary.  *Id*. at 1239. These are matters to be developed in discovery.  Therefore, the Court concurs with the rationale of the *Tripodes* decision that it would be premature to enforce the one-year contractual limitation provision within the Purchase Agreement.

Accordingly, NVR's Motion to Dismiss, as regard Plaintiffs' Breach of Contract Claim at Count I, will be denied.

b.   Breach of Warranty Claim

Count II of Plaintiffs' Complaint includes a claim for breach of implied warranty of good workmanship.   NVR argues that implied warranties are expressly foreclosed by the terms of the Purchase Agreement, which provides that "THE LIMITED WARRANTY OF THIS AGREEMENT IS THE ONLY WARRANTY BY SELLER APPLICABLE TO THE PROPERTY. NO IMPLIED WARRANTY (WHETHER OF MERCHANTABILITY, HABITABILITY, FITNESS FOR A PARTICULAR PURPOSE **OR OTHERWISE**) IS GIVEN ON PORTIONS OF THE PROPERTY OTHER THAN CONSUMER PRODUCTS." (ECF No.

1-2 at ¶ 6) (emphasis added). Similarly, the Limited Warranty in the Homeowner's Manual

provides that:

> [t]here is no express warranty of any kind, or implied warranty obligation
> **including, but not limited to**, any implied warranty of merchantability,
> habitability, or fitness for a particular purpose) given or undertaken by the Builder
> in connection with the construction or sale of the Home, and relating to the quality
> or condition of any part of the Home, except for this Warranty.

(ECF No. 1-3 at p. 61) (emphasis added).   Plaintiffs deny that the Purchase Agreement explicitly

disclaims any and all warranties other than the limited warranties contained in the Manual.

Moreover, Plaintiffs argue that the disclaimers are ineffective, because they are ambiguous and

should be construed against NVR.  Plaintiffs argue that, while the Purchase Agreement purports

to disclaim listed implied warranties of merchantability, habitability, and fitness for a particular

purpose, it does not list the implied warranty of good workmanship.  Plaintiffs argue that such

omission creates an ambiguity that should be construed against NVR, such that Plaintiffs may

claim under the implied warranty of good workmanship.   In response, NVR argues that the

language of the Purchase Agreement, concerning implied warranties, is unambiguously non-

exhaustive. (see bolded language above).  As such, NVR maintains that the implied warranty of

workmanship has been disclaimed, and the Plaintiffs' claims thereunder should be dismissed.

   Pennsylvania courts have held that provisions disclaiming implied warranties are valid

and enforceable where the disclaimer language is clear and conspicuous, including in

transactions between homebuilder-vendors and homebuyers. *See Tyus v. Resta*, 476 A.2d 427,

432 (Pa. Super. Ct. 1984) (holding that implied warranties may be limited by clear and

conspicuous language in contract between builder-vendor and home purchaser).  Further, Courts

applying Pennsylvania law have held that "language [disclaiming implied warranties] must also

be specific and particular to the legal rights the buyer is waiving and their relation to their effect

on specifically designated potential latent defects." *Ecksel v. Orleans Constr. Co.*, 519 A.2d

1021, 1025 (Pa. Super. Ct. 1987).   In addition, in *Krishnan v. Cutler Grp., Inc.*, 171 A.3d 856

(Pa. Super. Ct. 2017), plaintiffs asserted "claims for breach of contract, breach of express

warranty, breach of implied warranty of habitability, breach of implied warranty of reasonable

workmanship, and violations of the Pennsylvania Unfair Trade Practice and Consumer

Protection Law ("UTPCPL")."   *Id*. at 862-63.   In said case, the Superior Court observed that

"the language in the Warranty does not mention 'habitability' or 'reasonable workmanship.' It

simply uses the generic term 'implied warranties.'"   *Id*. at 884.   Thus, the Superior Court held

that "the language did not provide [the buyers] with adequate notice of the specific implied

warranty protections they were purportedly waiving by signing the Warranty." *Id.* Furthermore,

the Superior Court noted that "the supposed 'limiting' language in the Warranty was not

negotiated by the parties; it was part of [the seller's] boilerplate Warranty." *Id*.  Accordingly, the

*Krishnan* Court held that it could not "conclude that the implied warranties of habitability and

reasonable workmanship were properly limited." *Id.*

Here, the disclaimer language in the warranty does not specifically include the implied

warranty of good workmanship.   At this stage of the pleadings, Plaintiffs have sufficiently

pleaded a claim for breach of implied warranty of good workmanship.  Determining the validity

of the disclaimer is premature until the parties conduct discovery germane to the negotiation,

notice, and intent concerning any disclaimer of said implied warranty of good workmanship.

Accordingly, NVR's Motion to Dismiss Plaintiffs' Implied Warranty Claim in Count II

will be denied.

c.   UTPCPL Claim

1.   Economic Loss/Gist of the Action Doctrine

Count III of Plaintiffs' Complaint alleges violations of the UTPCPL, Section 2-201(4)(xiv), for NVR's failure to comply with the terms of any written guarantee or warranty; Section 2-201(4)(xvi) for NVR's repairs, improvements or replacements on tangible, real or personal property, of a nature or quality inferior to or below the standard of that agreed to in writing; and 2-201(4)(xxi) for NVR's fraudulent or deceptive conduct which created a likelihood of confusion or misunderstanding. (ECF No. 1 at ¶ 58).   NVR argues that Plaintiffs' UTPCPL claim is barred by the economic loss doctrine and/or the gist of the action doctrine under Third Circuit precedent, while Plaintiffs point to more recent precedent of the Pennsylvania Superior Court, which holds otherwise.

The economic loss doctrine bars a plaintiff from recovering tort damages for economic losses stemming solely from a breach of contract. *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 671 (3d Cir. 2002).  The economic loss doctrine prohibits claims if: (1) they arise solely from a contract between the parties; (2) the duties allegedly breached were created by and grounded in the contract; (3) the liability stems from a contract; or (4) the tort claim essentially duplicates a breach of contract claim or the success of a tort claim relies on the terms of a contract. *McGuckin v. Allstate Fire & Cas. Ins. Co.*, 118 F. Supp. 3d 716, 720 (E.D. Pa. 2015) (*quoting Pesotine v. Liberty Mut. Grp., Inc.*, Civ. A. No. 14-784, 2014 WL 4215535, at *4 (M.D. Pa. Aug. 25, 2014). The gist of action doctrine similarly "bars a plaintiff from re-casting ordinary breach of contract claims into tort claims." *Empire Trucking Co., Inc. v. Reading Anthracite Coal Co.*, 71 A.3d 923, 931 n. 2 (Pa.Super. Ct. 2013)

Here, NVR's relies on the holding in *Werwinski*, for the precedent that Plaintiffs' UTPCL claim should be dismissed pursuant to the economic loss doctrine.  In that case, the United States Court of Appeals for the Third Circuit, in predicting how the Pennsylvania Supreme Court would rule, held that the economic loss doctrine barred common law intentional and statutory fraud claims, including those brought under the UTPCPL. *Id*. at 678, 681.   Because the gist of the action's relates closely to the economic loss doctrine, District Courts have also held that the principles in *Werwinski* as applied to the gist of the action doctrine would serve to bar UTPCPL claims.  *See Price v. Foremost Indus., Inc.*, 2018 WL 1993378, *5 (E.D. Pa. Apr. 26, 2018); *Zemba v. NVR, Inc.*, 2018 WL 3023220, at *3 (W.D. Pa. June 18, 2018).

After the Third Circuit's 2002 *Werwinski* decision, the Pennsylvania Superior Court has twice ruled that UTPCPL claims are not barred by either the economic loss or the gist of the action doctrine.  *See Dixon v. Northwestern Mutual*, 146 A.3d 780, 790 (Pa. Super. Ct. 2016); and *Knight v. Springfield Hyundai*, 81 A.3d 940 (Pa. Super. Ct. 2013). Therefore, the issue at hand is whether this Court is bound by the 2002 Third Circuit Court *Werwinski*  precedent or by the subsequent Pennsylvania Superior Court rulings from *Knight* and *Dixon*.

In one, unpublished and non-precedential post-*Knight* and pre-*Dixon* decision, the Third Circuit followed *Werwinski* to bar a UPTCPL claim based upon the economic loss doctrine. *Berkery v. Verizon Commc'ns Inc*, 658 F. App'x 172, 174 (3d Cir. 2016).  However, the District Courts in the Third Circuit have split on whether to apply the *Werwinski* Federal court ruling or the *Knight* and *Dixon* Superior Court rulings.  Some District courts have followed *Werwinski* to bar UPTCPL claims. *See e.g. Gusforff v. MNR Industries*, 2018 WL 3328021 (E.D. Pa. July 6, 2018); *Powell v. St. Joseph's Univ.*, 2018 WL 994478 (E.D. February 20, 2018);  *Doe v. Trustees of Univ. of Pa.*, 270 F.Supp.3d 799 (E.D. Pa. September 13, 2017); *McGuckin v. Allstate Fire &*

*Cas. Ins. Co.*, 118 F. Supp. 3d 716, 720 (E.D. Pa. 2015).  Conversely, other District courts have

applied the *Knight* and *Dixon* Pennsylvania Superior court rulings, declining to apply of the gist

of the action and/or economic loss doctrines, such that UTPCPL claims proceeded.  *See e.g.*

*Lovelace v. Nationwide Mut. Ins. Co.*, No. CV 18-2701, 2018 WL 3818911, at *4 (E.D. Pa. Aug.

10, 2018)*; Pansini v. Trane Co.*, 2018 WL 1172461 (E.D. Pa. March 6, 2018);  *Busch v. Domb*,

2017 WL 6525779 (E.D. Pa. Dec. 21, 2017); *Landau v. Viridian Energy Pa, LLC*, 223 F.Supp.3d

401 (E.D. Pa. November 30, 2016);  *Sosso v. Esb Bank*, 2016 WL 3855031 (W.D. Pa. July 15,

2016) ); *Roberts v. NVR, Inc.*, 2015 WL 3745178 (W.D. Pa. June 15, 2015).

    Courts within the Third Circuit, "in the absence of a clear statement by the Pennsylvania

Supreme Court to the contrary or other persuasive evidence of a change in Pennsylvania law, are

bound by the holdings of previous panels of this court." *Debiec v. Cabot Corp.*, 352 F.3d 117,

131 (3d Cir. 2003).  However, that rule has "well-established exceptions," including one "where

there has been an intervening change in the law." *Landau*, 223 F. Supp. 3d at 412. (*citing In re*

*Pharmacy Benefit Managers Antitrust Litig.*, 582 F.3d 432, 439 (3d Cir. 2009)).  The Third

Circuit has noted that, "when we are applying state law and there is persuasive evidence that it

has undergone a change, we are not bound by our previous panel decision if it reflected our

reliance on state law prior to its modification." *Robinson v. Jiffy Executive Limousine Co.*, 4 F.3d

237, 239–40 (3d Cir. 1993).   Further, "[a]lthough state intermediate appellate decisions are not

automatically controlling, where the highest court of the state has not spoken," the Court "must

give serious consideration to the decisions of the intermediate appellate courts in ascertaining

and applying state law." *Id*. at 242.

    The UTPCPL and its relation to the economic loss doctrine or the gist of the action

doctrine supports deference to the state's intermediate court's precedence.  The District Court in

*Landau* noted, "the panel in *Werwinski* was painting on a blank canvas," and that fact alone, "should give pause because the intermediate appellate courts of Pennsylvania have [since] twice rejected *Werwinski*." *Landau*, 223 F. Supp. 3d at 413.   Likewise, one court observed "[w]e cannot ignore what the Pennsylvania courts have decided and how the law in Pennsylvania has evolved since *Werwinski* was decided." *Kantor v. Hiko Energy*, LLC, 100 F. Supp. 3d 421, 428 (E.D. Pa. 2015).  The *Kantor* Court further observed that, "when the Pennsylvania intermediate appellate courts have ruled to the contrary and their decisions have not been overruled by the state's highest court, we are no longer compelled to follow the Third Circuit's prediction.... It is state law, not federal law, we must follow." *Id*. at 427.  These principles are well-grounded, to avoid the perils of forum shopping.  As the *Landau* Court noted, "[t]he current divergence between the federal and state courts," on the question of whether a UTPCPL claim survives the economic loss doctrine, "means that the outcome of a case is currently a function of forum." 223 F. Supp. 3d at 414.   Where this is the case, the Third Circuit has directed district courts to avoid such a situation: "in all cases where a federal court is exercising jurisdiction solely because of the diversity of citizenship of the parties, the outcome of the litigation in the federal court [should] be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a State court." *Chamberlain v. Giampapa*, 210 F.3d 154, 158–59 (3d Cir. 2000) (*quoting Guar. Trust Co. v. York*, 326 U.S. 99, 109 (1945)).

In the instant case, Plaintiffs chose to file this matter in federal court, on the basis of diversity, pursuant to 28 U.S.C § 1332.  Had the case been filed in state court, the trial court would have been compelled to follow the precedents of *Knight* and *Dixon*.  This Court is persuaded that it should also follow the precedents of *Knight* and *Dixon*.  Therefore, the Plaintiffs' UTPCPL claim is not barred by the economic loss or gist of the action doctrine.

14

Accordingly, NVR's motion to dismiss Count III, on the basis of the economic loss doctrine or gist of the action doctrine, will be denied.

2. Justifiable Reliance

In the alternative, NVR argues that Plaintiffs' UTPCPL claim fails as a matter of law, because Plaintiffs have not alleged justifiable reliance in support of their claim.  Plaintiffs contend that their averments sufficiently state justifiable reliance as an element of their UTPCL claim. Further, Plaintiffs argue that they specifically pleaded that that they "justifiably relied upon Defendant's representations."  (ECF No. 1 at ¶ 70).  In addition, Plaintiffs have averred, that NVR represented that it would construct the Home in accordance with its designs and specifications, that it would construct the Home in a good and workmanlike manner, and that it would remedy/repair certain deficiencies, that it would follow building codes, laws, regulations, and industry standards, etc. (ECF No. 1 ¶¶ 48-51). Finally, Plaintiffs have averred that they relied upon these representations when they purchased their home.  (ECF No. 1 at ¶ 76).

"To bring a private cause of action under the UTPCPL, a plaintiff must show that he [or she] justifiably relied on the defendant's wrongful conduct or representation and that he [or she] suffered harm as a result of that reliance." *Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 438 (Pa. 2004).  Justifiable reliance in this context means more than a mere causal connection between the wrongful conduct and the harm; the plaintiff "must show that he justifiably bought the product in the first place (or engaged in some other detrimental activity) because of the misrepresentation." *Hunt v. U.S. Tobacco Co.*, 538 F.3d 217, 222 n.4 (3d Cir. 2008) (citing *Weinberg v. Sun Co.*, 777 A.2d 442, 446 (Pa. 2001).  Here, Plaintiffs' allegations contain the necessary components to support justifiable reliance for their UTPCL claim. However, averments, that Plaintiffs relied on NVR's representations in order to purchase their

home, occur only in Counts IV and V, Fraud and Misrepresentation. As will be discussed below, those counts will be dismissed on other grounds. With the dismissal of those counts, Plaintiffs' Complaint will no longer contain sufficient factual allegations of justifiable reliance.

Therefore, NVR's Motion to Dismiss the UTPCPL claim, based upon a failure to plead justifiable reliance, will be granted.  However, Plaintiffs shall be granted leave to amend Count III.

### d.  Fraud and Negligent Misrepresentation

Counts IV and V of Plaintiffs' Complaint allege claims for Fraud and Negligent Misrepresentation.  NVR argues that those claims should be dismissed based upon the economic loss and gist of the action doctrine.   Plaintiffs contend that their allegations go beyond breach of contract and encompass breach of the tort social duty of honesty and fair dealing.

Under Pennsylvania law, the gist of the action and economic loss doctrines are "designed to maintain the conceptual distinction between breach of contract claims and tort claims." *KBZ Commc'ns Inc. v. CBE Techs. LLC,* 634 F. App'x 908, 910-11 (3d Cir. 2015) (citing e*Toll, Inc. v. Elias/Savion Adver., Inc.*, 811 A.2d 10, 14 (Pa. Super. Ct. 2002)). The Supreme Court of Pennsylvania decision, analyzing these legal doctrines, generally recognize that parties to a contract may be subject to liability for any tortious conduct that occurs during the performance of a contract; however, caselaw still precludes tort liability for a party's breach of the duties created by the contract. *See e.g., Bruno v. Erie Ins. Co.* 630 Pa. 79, 112, 106 A.3d 48, 68 (2014) (gist of the action doctrine); *Dittman v. UPMC*, 196 A.3d 1036, 1054 (Pa. 2018) (economic loss doctrine). To this end, the Supreme Court has held the following regarding the gist of the action doctrine:

> [i]f the facts of a particular claim establish that the duty breached is one created by the parties by the terms of their contract—i.e., a specific promise to do something

that a party would not ordinarily have been obligated to do but for the existence of the contract—then the claim is to be viewed as one for breach of contract. If, however, the facts establish that the claim involves the defendant's violation of a broader social duty owed to all individuals, which is imposed by the law of torts and, hence, exists regardless of the contract, then it must be regarded as a tort.

*Bruno v. v. Erie Ins. Co.*, 630 Pa. 79, 112, 106 A.3d 48, 68 (2014) (citations omitted).   Similarly, in *Dittman v. UPMC*, the Supreme Court held that, applicability of the economic-loss doctrine turns on whether the duty at issue "arises independently of any contractual duties between the parties." 196 A.3d 1036, 1054 (Pa. 2018) (quoting *Tommy L. Griffin Plumbing & Heating Co. v. Jordan, Jones & Goulding, Inc*., 463 S.E.2d 85, 88 (S.C. 1995)). "Specifically, if the duty arises under a contract between the parties, a tort action will not lie from a breach of that duty. However, if the duty arises independently of any contractual duties between the parties, then a breach of that duty may support a tort action." *Id*. Stated another way, "[t]he economic loss doctrine does not preclude all negligence claims seeking solely economic damages, but continues to preclude actions where the duty arises under a contract between the parties." *Gernhart v. Specialized Loan Servicing LLC*, No. CV 18-2296, 2019 WL 1255053, at *4 (E.D. Pa. Mar. 18, 2019) (citing *Dittman, supra*).

Presently, NVR's duty to Plaintiffs derived from the Purchase Agreement to deliver the home free from defects.  Where Plaintiffs allege that the home, as delivered, did not meet the promised specifications, a breach of contract claim is stated.    Any damages due as a consequence of NVR's failure to perform such contract duties, are governed by the contract terms and contract law controls.  There is no independent social or tort duty stated in this case. Therefore, under each of the gist of the action doctrine and the economic loss doctrine, Plaintiffs' tort claims for fraud or negligent misrepresentation fail.

Accordingly, NVR's Motion to Dismiss, as to Counts IV and V, will be granted.  Any amendment to said counts is deemed futile.   Count IV, Fraud, and Count V, Negligent Representation of Plaintiffs' Complaint, will be dismissed.

   e. Consequential Damages

In Counts I and II of their Complaint, Plaintiffs include claims for diminution of home value, fees and costs to repair deficiencies, and other damages resulting from NVR's alleged breaches. NVR argues that Plaintiffs are not entitled to consequential damages, because the Purchase Agreement limits plaintiffs' remedies to repair or replacement.   NVR contends that, by executing the Purchase Agreement, Plaintiffs agreed to the limited warranty terms as follows:

> 6. Limited Warranty. You have received a copy of the Seller's Limited Warranty (the "Limited Warranty") prior to execution of the Agreement and agree to accept this warranty as the sole warranty being given to purchaser. THE LIMITED WARRANTY OF THIS AGREEMENT IS THE ONLY WARRANTY APPLICABLE TO THE PROPERTY. NO IMPLIED WARRANTY (WHETHER OF MERCHANTABILITY, HABITABILITY, FITNESS FOR A PARTICULAR PURPOSE OR OTHERWISE) IS GIVEN ON PORTIONS OF THE PROPERTY OTHER THAN CONSUMER PRODUCTS. . . [THE OBLIGATIONS OF SELLER] ARE LIMITED SOLELY TO THE REPAIR OR REPLACEMENT OF THE DEFECTIVE COMPONENT AND DO NOT EXTEND TO ANY DAMAGE OR HARM RESULTING THEREBY OR THEREFROM. THE SELLER SHALL NOT BE LIABLE FOR ANY CONSEQUENTIAL DAMAGES OR PERSONAL INJURIES ARISING FROM BREACH OF ANY OF THE LIMITED WARRANTIES DESCRIBED IN THIS AGREEMENT. IF ANY DEFECT IS DISCOVERED DURING THE APPLICABLE WARRANTY PERIOD, SELLER SHALL HAVE THE EXCLUSIVE RIGHT TO DETERMINE WHETHER THE DEFECT SHALL BE CORRECTED BY REPAIR, ADJUSTMENT OR REPLACEMENT. . .

ECF No. 1-2 at ¶ 6. Similarly, the Limited Warranty within the Homeowner's Manual, which is incorporated into the Purchase Agreement, also purports to limit damages as follows:

> Under no circumstances will the Builder be liable for special, incidental or consequential damages (including, but not limited to, bodily injury, death, loss of the use of the Home, damage to property of any kind not furnished by the Builder, or attorney's/expert's/consultant's fees and costs), regardless of the form of action or legal theory under which any claim is asserted against the Builder for breach of

warranty, breach of contract, negligence or strict liability. Id. Finally, the Limited Warranty provides for the exclusive remedy to be chosen by NVR: The repair, replacement or payment remedy selected by the Builder will be the exclusive remedy for which the Builder will be liable with respect to the pertinent defect. In no event will the Builder be liable for repair costs or other Warranty obligations amounting in the aggregate to more than the purchase price of the Home.

(ECF No. 1-3 at p. 59).

Plaintiffs argue that NVR's attempts to limit damages by contract are invalid, because those terms are unconscionable. Resolution of this issue requires the courts to "look to the parties involved to ensure there is no disparity between the entities in either bargaining power or sophistication." *Buddy's Plant Plus Corp. v. CentiMark Corp.*, No. CIV.A. 10-670, 2013 WL 169697, at *11 (W.D. Pa. Jan. 16, 2013), aff'd, 604 F. App'x 134 (3d Cir. 2015)(quoting *Carll v. Terminx Int'l Co.*, 793 A.2d 921, 924-25 (Pa. Super. Ct. 2002); and s*ee Clymer v. Jetro Cash and Carry Enterprises, Inc.*, 334 F. Supp. 3d 683, 690 (E.D. Pa. August 14, 2018) (internal citations omitted) ("[f]or a contract to be unconscionable under Pennsylvania law, it must be both procedurally and substantively unconscionable.... the test for unconscionability is whether one of the parties lacked a meaningful choice about whether to accept the provision [or contract] in question and [whether] the challenged provision or contract unreasonably favor[s] the other party to the contract.").

Plaintiffs' argument, challenging the validity of the damage limitations provisions, relative to the test of unconscionability, requires a fact-based inquiry that extends beyond the pleading stage. This inquiry is particularly not well-suited for the Motion to Dismiss stage of litigation.  Therefore, the Court will not dismiss Plaintiffs' claims for consequential damages at this stage.

Accordingly, NVR's Motion to Dismiss, as regard consequential damages, will be denied.

f.   Punitive Damages

Plaintiffs alleged claims for punitive damages in Counts III, IV, and V of their Complaint.  NVR seeks dismissal of any claim for punitive damages.  Counts III, IV, and V have been dismissed on other grounds.  As such, claims for punitive damages for said dismissed counts are moot.

Accordingly, NVR's Motion to Dismiss Plaintiffs' claims for punitive damages under Counts III, IV, and V, is denied.

ORDER

And Now this 22nd day of June, 2020, following consideration Plaintiffs' Complaint (ECF No. 1); NVR's Motion to Dismiss and Brief in Support (ECF Nos. 9 and 10); Plaintiffs' Brief in Opposition (ECF No. 11); and NVR's Reply Brief; and for the forgoing reasons, NVR's Motion to Dismiss will be granted in part and denied in part.  It is hereby ordered as follows:

1.   NVR's Motion to Dismiss Count I, Plaintiffs' breach of contract claim, is denied.

2.   NVR's Motion to Dismiss Count II, Plaintiffs' breach of implied warranty of workmanship, is denied.

3.   NVR's Motion to Dismiss Count III, Plaintiffs' UTPCPL claims, is granted.  Count III is dismissed. Plaintiffs are granted leave to amend their UTPCPL claim relative to justifiable reliance.

4.   NVR's Motion to Dismiss Counts IV and V, Plaintiffs' Fraud and Negligent Misrepresentation claims, is granted.  Any amendment of said claims is deemed futile.  Counts IV and V are dismissed.

5.   NVR's Motion to Dismiss Plaintiffs' claims for consequential damages, under Plaintiffs' Counts I and II, is denied.

6. NVR's Motion to Dismiss Plaintiffs' claims for punitive damages is denied as moot, without prejudice as to Count III, if said claim in amended.

Plaintiffs shall file any permissible amendment on or before July 6, 2020, and Defendant shall file its answer on or before July 20, 2020.

BY THE COURT:

MARILYN J. HORAN
United States District Judge